Good morning, Your Honors. May it please the Court, my name is James Seymour. I'm appearing for Jerry Fong, who is unable to be here today, to argue on behalf of Chris Yiu, and also to present an argument for Lisa Chan, who is in pro per. Of the 20 minutes that our side has, I will endeavor to speak for about 10, and Mr. Michael, who represents the third party, will speak for about 5. We'd like to reserve about 5 minutes for rebuttal to the government's case. Chris Yiu has his property, his community property interest, in his family residence being subjected to execution without having had the right to a due process hearing where evidence was presented to support the basis for the enforcement of a judgment against that family home. As the briefs indicate, Mr. Yiu was not charged and was not a party to the judgment. In fact, the argument is that he cannot be a party to the judgment, he cannot participate in challenging the judgment because it's a criminal judgment, and that third parties do not have the right to attack criminal judgments for the purpose, because criminal judgments are considered to be final and not subject to attack by the third party, by a third party. In this case, that's a serious problem because, as the briefs in the record indicate, there was no evidence produced to show the amount of lost profits suffered by Microsoft. He wants to attack the amount. Is that what this is all about? Yes. He would like to attack the amount. The case that I'm indebted to Mr. Michael here to for submitting in a 28-J letter of United States v. Hudson that was decided recently by the Tenth Circuit not only involves this specific issue, it involves Microsoft and the sale of counterfeit software. And the Tenth Circuit in that case reversed a restitution hearing for the exact reasons, a restitution determination for the exact reasons that we are arguing here. Was the restitution determination as to the defendant? In the Tenth Circuit case? Yes. Yes, it was. That's what I thought. It was. This is not that, is it? This is a question of whether the third party can re-litigate the amount of debt incurred by, let us call it, this first party. Was the wife incurred a debt during the marriage, a substantial debt? Let's call it a debt for the moment. You can argue about whether restitution is a debt or not. Let's just call it that for a moment. Wife incurs a substantial debt. Predator now wants to execute on the community. What's your best case that says the other spouse, the good spouse, can re-litigate the amount of the debt? I'm sorry, I didn't – what's the best case? What's your best case that the other spouse may re-litigate the amount of the debt incurred by the wicked spouse? Well, I would quarrel with the question of whether it was litigated in the first place. Secondly – It was in front of the court. She could litigate it. She could have directly appealed. She brought a 2255. She lost it. Let's not quibble. Let's say it was litigated. Let's say that in my crazy world, my universe, it was litigated, okay? What's your best case from California that says that the other spouse, the good spouse, can re-litigate the debt found against the bad spouse? There is no case. There's – this issue has never arisen before, Your Honor. Your position is that this is a matter of Federal law? He has to be able to re-litigate it? It's a matter of constitutional law. I think the same situation would apply if it were a California State case. Okay. So let me understand. Is the real ramification – because the reason that he's affected by this is because it's community property. Is that correct? That's correct. So is the ramification of your position, then, that in any restitution order where the property of the defendant, who clearly is obligated to pay the restitution, includes community property, that her interest is not – the defendant's interest is not reachable? Well – Community property is reachable by – or at least where it's a residence and it can't be divided easily is reachable under – for restitution? We're not saying that it's not reachable. I think your question, Your Honor, assumes the fact that the restitution order against the defendant is final. As Judge Fernandez indicated, there's no further litigation. There are – but we have not, as we're arguing, we've not established a situation where the innocent spouse, for want of a better phrase at this point, is not – has not had an opportunity to litigate it. And therefore, his interest is not reachable. His interest is not subject to litigation – to execution. Under the execution statutes – Well, how do then do you – how do you reach real property, then, ever, of its community? If this – without conceding all of the issues that underlie your question, there could be an execution sale where the property was sold, but the innocent spouse's half of the proceeds would be paid over to him. Would that turn it from community into separate? And if so, on what theory is that? Well, that's – Let's say it's community property. I'm sorry? Let's say it's community property. Correct. And now the creditor – doesn't have to be the government – now the creditor executes on this debt that the non-innocent spouse has incurred. Executes on the community. California law says you can do it. All the – California law, in talking about what property is, says if it's community property, what it is, is that creditors can execute on the whole community for the debt of one of the spouses. That's what it says. Okay? I think you're – you're saying, well, yeah, but when they do that, they only get to keep half. What happens to the other half? Does it transmute into something other than community? That's not an issue that has been raised by anyone at this point. Well, I know that, but on your theory, if the husband gets it, it has to transmute into something other than community. If it doesn't, it's still community property. We can – the government can execute on her half of that community. And if that works, then he can execute on the other half. And I think the infinite progression will mean the government can take all the community, like California says. Well, what turns it into his separate property? You've stated your argument so that it would wind up that way, Your Honor. Well, what turns it into his separate property? That's my question. What's your ignoring – well, that's a question that I – has not been raised and I'm not prepared to answer because I haven't even considered it, quite frankly. What is the relief that you want here? We want the opportunity for Mr. Yu to be able to challenge the restitution order as applied to his interest in the community property. He's never had that opportunity. Judge Fernandez's question presumes that in a criminal restitution situation, a defendant can contract away the innocent spouse's rights. If this were a civil situation, then he would have a right to intervene. If it were a criminal forfeiture situation, he would have a right to intervene. The – Well, I guess I'm not understanding. The restitution order is binding with respect to the – to the spouse. The defendant's spouse. Yeah. Correct. We take the position that it can be attacked because it's an illegal restitution order because it doesn't – there was no evidence to support it, but that's a separate issue. I'm just assuming, as Judge Fernandez asked me to, that it is a valid binding order in answering questions in that context, but it is still part of our argument that that restitution order is illegal because it wasn't supported by evidence. In the civil situation that you may – mentioned, if this was just a different kind of a debt, would the innocent spouse have to be joined in order to go after the community property? In California, no. In Arizona, yes. It's interesting that it varies by state. And if it's not necessary, and one spouse goes out and incurs – just runs up a credit card bill or something like that, that might get reduced to judgment, and the other spouse is going to maybe lose a community property interest when it never had anything to do with the debt. I think it would be probably inconceivable that a substantial judgment would be made against one spouse without the other spouse being aware of the litigation and having the right to intervene if that spouse felt that there was a basis for challenging the claim. We're dealing with a situation here where there was virtually no trial. The plea agreement contracted away the right to restitution and the impairment of the community property. I guess I don't understand – I still am not quite understanding what the court was supposed to do. It – to receive evidence? Yeah. Are you saying that they should have had some kind of a hearing in which you retry the question of the amount in which you litigate the amount? We can quibble about whether it's retrying in these circumstances. Right. Where you – your client litigates the amount of the property that you – that his spouse – the value of the illegal property that she sold. Is that correct? To be in a – to have an evidentiary hearing where Microsoft is required to prove, as they were supposed to prove in the original restitution hearing, the amount of their lost profits. That's exactly what that Hudson case in the 28J letter says. And what's the denouement of this procedure? So now we have a judgment against her out of the restitution hearing of, let's say, $2 million, just hypothetically. And now the husband comes in at the execution hearing, and he is permitted to attack the restitution amount, and he gets it down to $1 million, okay? So now we have a restitution judgment for $2 million. Husband has shown that it really should only be $1 million. Where do we go from there in terms of execution? This is an execution procedure. That's correct, Your Honor. First of all, I think it's not appropriate to presume there would be $1 million. I'm not presuming anything. I'm just saying let's say that's what happens. You can call it – you can say that hers is A and his is B, which is less than A. That's all that matters. So there's a restitution judgment of A against her, and he gets to have this big fight at the execution stage to show that it really should have been B against her. Now, what happens now on the execution order? Well, it depends on the value of the property. That would be applied against his community property interest, I would presume. What's that? They now execute on the property, and what is it that we apply against his community property interest, in your view? The amount of whatever the restitution order was determined to be on his hearing. So we take half of B and say he gets to keep the rest. Is that your position? B is the amount that he's liable for on the restitution hearing? Is that what you're saying, Your Honor? No. B is the amount that he shows to have been the true restitution amount. That's what I meant, the amount that he's responsible for. So in your view, we take the property, we take half of B and deduct it from his half of the community. Pay that over to the government. That would be my understanding. Okay. I understand your point. Well, I've been trying to field the other questions here. I would like to respond to your question about the severance of the community properties. Community property can be severed if the parties agree to it through transmutation, and I would presume this would be quasi-voluntary, involuntary severance of the community property so that that would be what would occur. I'm sorry I wasn't prepared to answer that right off because you obviously had thought of an issue that hadn't been brought up, and I've only been in this case for a week, so. I would also like to point out that the McClure v. Ashcroft on which the government relies really isn't sound precedent for the ignoring the rights of the third parties. That case specifically stated that and cited three circumstances in which third parties had been found unable to attack a criminal defendant's judgment, and those were related to free speech, free association, residence, and employment. None of them related to property, and the Court specifically said we leave for another day the justicability of situations when third parties might be able to attack a judgment. Okay. Counsel, you're doing a good job, but you've just about used all of the time. I realize that you're going to argue. I'm sorry, and I will defer to Mr. Michael, who has points to make. Thank you. Thank you, Your Honors. I'm David Michael. I represent the mother, Lei Huang Chan, in this matter. I don't want to get into the black holes, academic black hole of the applicability of restitution orders to third parties. I do want to make a couple comments because of what I heard Judge Fernandez mentioning, and I think that if you look at an analogy, the best analogy is criminal forfeiture law, because under criminal forfeiture laws, when you have a criminal defendant and that that criminal defendant is convicted of a crime and the government orders and the court orders a forfeiture of that defendant's property, anybody who has an interest in that property can come in on an ancillary proceeding, and in that ancillary proceeding, they can assert their interest in that property. And in those proceedings, they, in fact, have a right to go back and challenge the sufficiency of the court's forfeiture against the defendant himself. So if you want an analogy, that's a possible analogy. And I do appreciate Judge Fernandez's – it sounded like it was a reference to Zeno's paradox that I remember from my philosophy class, that if you go half – all the distance, you have to go half the distance, and half the distance, you have to go half that distance. And I can see the quandary that that has created for many thousands of years. But it seems to me that a restitution order, if there is no proof of loss by the victim a clear proof of loss presented to the court, that constitutes an illegal sentence. And if it's an illegal sentence, then the court has no statutory jurisdiction to impose that illegal sentence. And I would think that that issue is never waived, and that issue is something that can be raised by anybody at any time. So I'm not going to say any more about restitution other than to add that Ms. Lei Huang-Chan stands in a completely different position, even if she does not have the to attack. That restitution order cannot apply to her interest in this property. She provided – the mother provided the down payment of almost $580,000 plus $10,000 for the purchase of the property. It's uncontroverted that that money came from the mother's account. The government and the court made some broad, generalized statements about, well, maybe that wasn't her account, well, maybe that wasn't her money. But there's no evidence by the government, nothing. Were they given discovery? Did they ask for discovery of the source of the money? Did the government ask for discovery? Or the court? Did they ask about the source of the money? I don't think the government needed to ask for discovery. The government could have investigated the account all it wanted. It's the power of the federal government. That wasn't my question. Did they ask for discovery? Did they seek to discover the source of the funds? I do not believe that they sought to discover the source of the funds in this particular case. But this procedure occurred after the government had a tremendous amount of documentary evidence regarding the source of the funds. It was never a secret that the funds came from Ms. Lei-Huang Chan, the mother's United Savings Bank account. This case is replete with game playing. That's perfectly obvious. This case, supposedly the money comes from her and supposedly the property is put in the kids' names so that they can trick the bank into thinking it's their money and so they'll get a loan to start with. Then the property is supposedly deeded to a trust. Not to the mother, but to a trust. The mother is trustee for the daughter. And then the property is conveyed from the trust to the kids again so that they can put it up for her bail, at which point they represent to the court that it's their property. Moreover, now we're told, even though it's not in the record, obviously, and can't be, that now they have a separation agreement. Guess what? Now it's all split. But, of course, it looks like she still lives on the property, even though the property supposedly belongs to him. It looks like an awful lot of moving around things. And it seems to me that in that situation, the government and the court could well ask for proof that the money in that account actually came from the mother. Well, Your Honor, that's not exactly what happened at all. I mean, you can give a sinister characterization to probably any particular fact. In fact, the property was put in the name of Lisa Chan and her husband at the time of the purchase, and the down payment for the purchase was, in fact, provided by the mother. There's nothing wrong about that. There's nothing sinister about that. It happens all the time. In fact, immediately afterwards... It happens all the time if it's a gift. It does not happen all the time unless the bank is told, oh, guess what? We got this money from somebody else. We want you to loan us the money. But we're not putting our own money in. It's coming from someone else. You're telling me all that was made plain to the bank? Yes, it was, Your Honor. In fact, immediately after the purchase, there was an attempt to transfer the property back from Lisa and Chris, Lisa Chan and Chris Yu, the husband and wife, transfer it back into the name of the mother and the son, Lei-Huang Chan and Chris Yu. That was transparent. They were recording it. They weren't transparent at all. The bank would have found out about that. Supposedly as trustees. It was supposedly as trustees. Oh, it was a straight transfer from the — the error in that transfer was — excuse me, Your Honor. The error in that transfer was that instead of transferring it from Lisa Chan and her husband to the mother and Lisa Chan's husband, the deed incorrectly stated it was a transfer from the mother as the wife of Chris Yu to the mother and Chris Yu. That was the error, and that was a totally — and, Your Honor, this happened in 1998, way before the criminal prosecution. I won't ask any more, ma'am. All right. Have you completed your thought? Thank you, Your Honor. Well, I've submitted the issue on the constructive trust and the resulting trust also, so you have that. Thank you. Good morning, Your Honors. I'm Steve Johnson with the United States Attorney's Office in San Francisco. I just wanted to make clear briefly, I was not the prosecutor on this case. I'm a civil assistant collecting the debt. So to the extent there was information in the criminal case, it was not available to me. Most of that would have been grand jury testimony, so I have to sort of recreate a record for myself. Briefly, to address the question of proof of the money that was paid, Judge, we did request discovery on the source of the funds that were used, and the defendant's family members did not cooperate. Ultimately, the court entered an order, but the discovery was not completed by the time the record in this case became final. There is nothing in the record. Judge Wilkin found in the district court that the family members had not provided any clear evidence that the money had come from Lisa Chan, the defendant's sources. What is clear is Lisa Chan signed the wire transfer for the largest deposit, which was about $500,000. Quickly, I'd like to address, too, the question of the chain of title. It is a confusing chain of title. The court seems to have a handle on how it worked, but I would like to point out that in spite of the fact that about the time of the purchase of the property in September of 1998, the parties alleged they entered into a consent agreement and recorded a deed of trust in favor of the mother and the son-in-law. Two months later, Lisa Chan and her husband filed a declaration of homestead on the property. So whatever was happening, and the district court gave very little weight to those documents, whatever was happening was inconsistent with the declaration of homestead by the two community property holders, the husband and the wife, two months later. And that's reflected in the record. It's the government supplemental excerpts at 131. That previous conveyance was unrecorded. Is that right? I'm sorry, Your Honor, I can't hear you. It was an unrecorded conveyance. Right. It was an unrecorded conveyance. That's the one the court gave little weight to. Right. And it was recorded after the homestead. Oh. Well, at the time of this, of the restitution order, if one went to do a title search, whose name would they find the recorded owners of this property? At the time of the criminal conviction, Your Honor, it would have been Lisa Chan and Chris Yu as community property, which is how it remains today. And assuming that the source of the funds was the mother, just assume that, that that is shown. Then where does that get you? Well, it would get me to the point where I would think she made a gift to her daughter because she put the title in her daughter's name with her husband. And the community, you know, the position that the appellants take is that Chris Yu made payments on the property, and Judge Wilkin found payments had been made. But remember that at the time, Chris Yu and Lisa Chan were married. So any payments that Chris Yu made were community property. It's wrong to say that Chris Yu was making payments. It's a matter of fact, and the record shows, that they were married at that time. Those have to have been community property payments. Okay. I'd like to ‑‑ I think counsel's argument confused a couple of things where there were sort of two things going on at the same time, so I'd like to sort of stretch them out a little bit. The first is the community property issue, and the second is really, to my mind, sort of a standing issue. I think the Court seems to have a handle on the community property issue. That being, when a spouse incurs a debt that the other spouse doesn't ‑‑ does not incur and a judgment is entered, what can be used to pay that debt? Well, under California community property law, and we've cited all of the statutes in our brief and the cases, it's quite clear the entire community is susceptible to the debt, both for premarital debt and marital debt. This debt falls squarely in that category. She was married to Chris Yu. The defendant was married to Chris Yu at the time the debt was incurred. The property was community property. And quite clearly, under California law, community property is used to pay those debts. We think that's quite simple. And it can be true that ‑‑ I mean, I can hypothesize a case where an individual has a credit card that a spouse doesn't know about, gets into trouble with the credit card, and a judgment is entered. And the credit card company, I think, would be surprised to learn that it wouldn't be able to collect that debt against the entire community. There are provisions for severing community and variety of other things. Those don't happen in the creditor context, though. Those happen in the context of marital obligations. Do people divorce? Do people die? A variety of things happen. The other thing that's important to keep in mind is that community property is one whole property. The court's case in U.S. v. Fidler discusses that at some length. Community property is not severable into one party's part and the other party's  There's the representation made a number of times with the argument in Appellant's papers that Chris Yu's share is being taken. Well, he doesn't really have a share under community property law. He has a right to community property, which under California law is subject to the claims of creditors. He doesn't have a share of the community property. There's no part that he can protect on his own. That's not the way community property works. And in terms of standing, I think I would refer the Court again to the McClure case, which I thought was very well decided. McClure makes clear that it is not appropriate for a third party to intervene in a criminal action. I mean, what counsel is arguing here is that the entire criminal case should be reopened, a case that's been closed for five years. Kennedy. Do you know whether when it's a criminal forfeiture, you can get third parties coming in with the opportunity to contest the forfeiture judgment? I have passing familiarity with forfeiture law. And there are third party claim provisions. But that's a part of Federal forfeiture law. Federal forfeiture law, and there's a case of site here which actually explains it pretty well. Federal forfeiture law does, as a matter of statute, authorize third parties to come in. And I think the reason is because under Federal forfeiture law, the Federal Government does not allow a third party, an innocent third party's property to be taken as a matter of forfeiture. But that's a statutory right that arises under Federal law. Here, the question is purely debt collection. A judgment has been entered. A judgment is due. What can we use to collect it? We look to California law, which tells us, use community property. What – there is an issue raised as to whether or not this is a debt. Could you address that? Well, I think it is a debt. I think that the case that – I think you're referring to the case that's Moser that talks about whether this is a debt or not. Ultimately, that case, what you need to know about that is that the – it was decided at a time when there was really uncertainty about the Federal bankruptcy law. That case actually involved a discharge of a bankruptcy, a discharge in a bankruptcy case. And the question was, in a bankruptcy case, is a restitution debt discharged at the time? The bankruptcy code did not have a provision that exempts restitution debts from exemption. I noted in my brief there's an extensive sort of long footnote. I'm sorry for boring you. But it was a complicated question, and it took a long time to resolve. Ultimately, what – the question of whether it's a debt under California law was solved by the California legislature. The California legislature looked at the decision and said, ultimately, restitution has to be paid, victims are entitled to restitution, and it should be collected just as any civil debt is collected. So California – the California legislature effectively overruled that decision by saying restitution should be collected just as any civil debt is collected. Kennedy, when did they overrule it? Some years later. I'm not sure what the date was, Your Honor, but it is afterward. Before the events in this case? Yes, it would have been before the events in this case. My recollection is it was about 96. Is there any issue of Federal – is there any issue – what issue of Federal law do you see in this case? What issue of Federal law do I see in this case? I guess I see, one, whether the appellants have the right to basically ask the court to reconsider a settled judgment. I think the answer to that is no. There was an appeal that was dismissed. There was a 2255 motion, which was – That was by her. By her, right. I think under Federal law, the McClure case tells us that the appellants don't have standing to attack the criminal sentence, and I think that's the right result. I think this is purely a matter of debt collection and basically a matter of Federal law looking to California law for the rules. As to what is property that could be? That's correct. And with respect to the resulting trust and the constructive trust, I will submit those on the papers, Your Honor. Any further questions? Thank you, counsel. Thank you. Are you burning debt? If you wish to add – if you're burning to add something, you may. Very briefly. Just on this debt issue that's been recently addressed, the cases, Calhoun and Moser cases on whether a debt is a – or whether a restitution judgment is a debt, the legislature did not overturn those cases by making the enforcement of judgments law applicable to the enforcement of a restitution order. It simply provided a procedure for collection. It did not say that a restitution order was a debt. Finding something is a debt is a matter of substantive law, and procedural statutes don't change substantive law. They only give a procedure for effecting collection in this case or some other procedural aspect. The Soderling case in which the government relies for the fact that they claim a debt restitution order is a debt was an improper case, and the Calhoun case was never raised, probably because the defendants there were improper, and they probably weren't aware of it. The Court did not consider it, and I don't think it can be taken as precedent that determines the issue, because not only was Calhoun not mentioned, the issue of whether a restitution order was a judgment was not addressed. Calhoun remains sound law that restitution order is not a debt under California law, and that is the debt issue that I didn't get to in the opening argument. Thank you. Thank you. The case just argued is submitted for decision.
judges: Schroeder, Canby, Fernandez